## OSGOOD v. A. S. ALOE INSTRUMENT CO.

(Circuit Court, E. D. Missouri, E. D. November 4, 1897.)

### No. 3,839.

1. COPYRIGHT—INFRINGEMENT SUITS—BURDEN OF PROOF.
   An author suing for infringement of a copyright has the burden of showing a literal compliance with each and every statutory requirement in the nature of conditions precedent to the acquisition of a valid copyright.

2. SAME—ACQUISITION OF COPYRIGHT—DEPOSIT OF COPIES OF WORK.
   Under the act of March 3, 1891, two copies of the book must be delivered to the librarian. of congress not later than the day of publication thereof; and one who, without knowledge of the passage of this act, deposited copies of his work within 10 days after publication, as required by the act of 1870, acquired no rights whatever.

3. SAME—NOTICE OF COPYRIGHT.
   A notice of copyright, in the following words: "Copyright, 1891. All rights reserved,"—is not a sufficient notice, under the act of June 18, 1874 (18 Stat. 78), since it omits the name of the person by whom the copyright is taken out. Nor can this omission be supplied by reference to the title page, where the name of the publisher appears, for there is no presumption that the publisher is the author.

This was a suit in equity by Adelaide H. Osgood against the A. S. Aloe Instrument Company for alleged infringement of a copyright.

Paul Bakewell, for complainant.

M. B. Jonas and A. C. Fowler, for defendant.

ADAMS, District Judge. This is a suit for relief against an alleged infringement of a copyright. Complainant avers that she was, in 1891, the author of a book entitled "How to Apply Matt, Bronze, La Croix, and Dresden Colors to China;" that, in order to secure copyright thereof, she fully conformed to the requirements of the act of congress approved March 3, 1891, and in so doing deposited a printed copy of the title of said book, and also two copies of the book itself, not later than the day of its publication, with the librarian of congress. She further avers that she gave due notice of her copyright, by inserting in the several copies of said book, on the page immediately following the title page, the words as follows: "Copyright, 1891, by Adelaide H. Osgood, New York. All rights reserved." The bill further avers that the defendant, in a catalogue or price list published by it, infringed her copyright, by pirating and embodying therein substantial and material parts of her book. The defendant denies that complainant had any legal copyright in or to said book; avers that the complainant did not, later than the day of publication, deliver at the office of the librarian of congress at Washington, District of Columbia, or deposit in the mail within the United States, addressed to the librarian of congress at Washington, District of Columbia, two copies of her said book; and further avers that she did not give due notice thereof as required by law; and denies that it has in any manner made unfair or unlawful use of any of the contents thereof. On the issues so made the cause is submitted for judgment on the proof.

The act of March 3, 1891, above referred to, gives to every author, designer, or proprietor of any book the sole liberty of printing, reprint-

ing, publishing, and vending the same, upon complying with the provisions of the act, which require that the author shall do two things: First, deliver at the office of the librarian of congress, or deposit in the mail within the United States, addressed to the librarian of congress at Washington, District of Columbia, a printed copy of the title or the book; second, deliver, not later than the day of publication or the book, at the office of the librarian of congress at Washington, District of Columbia, or deposit in the mail within the United States, addressed to the librarian of congress at Washington, District of Columbia, two copies of such copyright book. And by the provisions of section 4962, Rev. St., such author can maintain no action for the infringement of his copyright unless he shall give notice thereof by inserting in the several copies of every edition published, on the title page, or on the page immediately following, if it be a book, the following words, viz.: "Entered according to the act of congress in the year ————, by A. B. in the office of the librarian of congress at Washington," or, at the option of the author, the word "Copyright," together with the year the copyright was entered, and the name of the party by whom it was taken out, thus: "Copyright, 18—, by A. B." By the provisions of this act an author may secure a copyright entitling him to an exclusive monopoly, for the period of 28 years, to the sale of his own productions, provided he conforms to the requirements of the act already particularized. These requirements are in the nature of conditions precedent to the right, and must be strictly complied with. Unlike the laws governing the issue of patents to inventors, no certificate is made by the government conferring a copyright upon authors. They therefore have no grant conferring upon them, in terms, a monopoly in or to their productions, and therefore have nothing to show a prima facie case, like that which arises in a suit for the infringement of letters patent, upon the production of the patent itself. Authors take their rights under and subject to the law, and, when assailed, the burden is upon them to show literal compliance with each and every statutory requirement in the nature of conditions precedent. Wheaton v. Peters, 8 Pet. 591; Merrell v. Tice, 104 U. S. 557; Thompson v. Hubbard, 131 U. S. 123, 9 Sup. Ct. 710.

I shall first consider the issue presented as to whether the complainant, prior to the date of publication of her work, delivered to the librarian of congress two copies of her book. With a disposition much in favor of upholding copyrights, and thus securing to authors what seems to be a natural right to the rewards of their own literary labors, I have studiously examined all the evidence bearing on this question, and am constrained to find that the complainant's book was offered for sale, sold, and given away, and therefore, within the meaning of the law, "published" (see Drone, Copyr. p. 291; Gottisberger v. Publishing Co., 33 Fed. 381), prior to the 20th day of November 1891, the date of the delivery of the two copies to the librarian of congress. I do not believe that an analysis of the evidence which conduces to this conclusion will be of any service to counsel. They have carefully and critically done this in their respective briefs and arguments. I will, however, state that in my opinion the testimony of the complainant and her main witness, Mr. Cash, her publisher, are very vague and

uncertain, somewhat contradictory, and, on the whole, unsatisfactory. I do not believe that they intentionally misrepresent anything. The fact that there had been a recent change in the laws of congress, requiring the delivery of two copies of the book to the librarian of congress not later than the day of publication thereof, was not known to them. They, according to the proof, did not, at the time of the publication of complainant's book (November, 1891), know of the existence of the act of March 3, 1891. They believed complainant had, under the provisions of the act of July 8, 1870, with which they were familiar, any time within 10 days from the publication of her work to deliver two copies thereof to the librarian of congress, and thus perfect her copyright. Acting on this belief, I think, they innocently, but unfortunately, permitted publication of complainant's book before the day they delivered the required copies to the librarian of congress. This finding renders complainant's copyright void.

Again, I am constrained to find from the proof before me that complainant failed to insert in the several copies of her book, on the title page, or on the page immediately following the same, notice of her copyright, as required by the provisions of the act of March 3, 1891. She caused to be inserted on the page immediately following the title page the following words: "Copyright, 1891. All rights reserved." This is clearly not sufficient. She should have added by whom the book was copyrighted. The argument of complainant's counsel is that inasmuch as there appears on the title page the words, "Published by Osgood Art School, 1891," these words should be read into the copyright notice appearing on the next page, and, inasmuch as the Osgood Art School was the trade-name of Adelaide H. Osgood, the whole, taken together, is equivalent to the notice required by the act of congress. I cannot agree to this view. The statute requires that the notice must at least contain the word "Copyright," together with the year the copyright was entered, and the name of the party by whom it was taken out, thus: "Copyright, 1891, by A. B." Giving the most favorable construction to the language found on both pages, and conceding, for the sake of argument only, that we may look to both these pages, and not one only, for the notice of copyright, it cannot be held that they together give any information whatever as to the party by whom the copyright was taken out. The book may have been published by the "Osgood Art School," and this may have been the trade-name of Adelaide H. Osgood; but the statement that it was so published is not a statement, or the equivalent of a statement, that Adelaide H. Osgood took out the copyright. It is a matter of common knowledge that the publisher of a book is not necessarily or usually the author, or the person securing the copyright. The proof in the case tends to show that complainant, after delivering two of her books containing the defective copyright notice to the librarian of congress, was informed of the defect apparent in the notice; that she thereafter attempted to correct the same by "tipping in" a title page containing on its other side a corrected notice. The edition of her book so claimed to be corrected consisted of 522 copies. When this change took place, or whether it was made to perfect the notice, or as a preliminary to a supposed second valid copyright for the same book, is

left by the evidence, at best, uncertain.   However this may be, I am constrained to find from the evidence that before any change was made, and before November 20, 1891, the date of the delivery of the copies to the librarian of congress, a substantial number of complainant's books containing the defective copyright notice were sold and distributed to the public.   Such copies certainly contained no copyright notice, within the meaning of the law; a defective notice being, in contemplation of law, no notice whatsoever.   I am also constrained to find, from practically undisputed evidence, that at least three copies of the fourth edition of complainant's book, containing such defective copyright notice, found their way into the public use without ever having had any change made in the copyright notice.   In addition to this, a fair inference could be drawn from the facts of the case that many more copies might have been so published.   The evidence satisfying me of these last conclusions of fact consists of statements of witnesses, exhibits in the case, original invoices of sale made by complainant's publishers, and other facts and circumstances attending the first introduction of the book to the public.   Such being the facts, there was a clear failure to conform to the requirement of the law to give notice of the copyright "by inserting in the several copies of every edition published" such notice.   For this reason it must be held that complainant could maintain no action for the infringement of her copyright, if she were otherwise entitled to it.   The foregoing conclusions render unnecessary any consideration of the issue raised as to whether the defendant made unfair or unlawful use of complainant's book.   The bill must be dismissed.