## LEDERER v. SAAKE.

(Circuit Court, E. D. Pennsylvania. January 22, 1909.)

No. 61.

1. COPYRIGHTS (§ 70*)—ACTION FOR INFRINGEMENT—BURDEN OF PROOF.

In an action for penalties for infringement of a copyright, the burden rests upon the plaintiff to prove title to the copyright by showing a strict compliance with every statutory requirement, as well as infringement; there being no' grant, as in case of a patent, to raise a presumption of validity.

[Ed. Note.—For other cases, see Copyrights, Dec. Dig. § 70.*]

2. COPYRIGHTS (§ 70*)—ACTION FOR INFRINGEMENT—DEFENSES.

In a suit for penalties for infringement of a copyrighted publication by the person in whose name the copyright was taken, the fact that he is not the author cannot be set up as a defense, it being immaterial to defendant whether plaintiff is in fact the owner or holds as trustee.

[Ed. Note.—For other cases, see Copyrights, Dec. Dig. § 70.*]

3. COPYRIGHTS (§ 70*)—ACTION FOR INFRINGEMENT—WHO MAY MAINTAIN.

Where an American copyright of a German play was taken in the name of the author, a contract by which he granted the stage right to produce the play in the United States to another does not vest the latter with the right to sue in his own name for penalties for infringement of the copyright.

[Ed. Note.—For other cases, see Copyrights, Cent. Dig. § 68; Dec. Dig. § 70.*]

4. COPYRIGHTS (§ 70*)—ACTION FOR INFRINGEMENT—EVIDENCE—PROOF OF DEPOSIT OF COPIES OF BOOK.

The certificate of the Librarian of Congress that two copies of a book were deposited with him is competent evidence of such fact in an action for penalties for infringement of the copyright of such book, and is sufficient where the identity of such copies with the book in suit is shown.

[Ed. Note.—For other cases, see Copyrights, Dec. Dig. § 70.*]

On Motions by Defendant for New Trial and for Judgment Notwithstanding the Verdict.

Thomas Stokes, George Wharton Pepper, and Louis Steckler, for plaintiff.

Joseph H. Taulane and Hector T. Fenton, for defendant.

J. B. McPHERSON, District Judge. This is an action to recover the penalties denounced by section 4966 of the Revised Statutes (U. S. Comp. St. 1901, p. 3415) against the unauthorized production of a copyrighted dramatic composition. Two plays are involved, both by German authors; one being "Alt Heidelberg," by Wilhelm Meyer-Foerster; and the other, "Grossmama," by Max Dreyer. The copyright in Alt Heidelberg was taken out in the name of the plaintiff, Emanuel Lederer, as proprietor, in 1902, and the copyright in Grossmama was taken out in the name of Max Dreyer, as author and proprietor, in 1898. The alleged infringements took place in December, 1906, and February–March, 1907, and a verdict was rendered in favor of the plaintiff for $450, of which $200 was for the production of Alt Heidelberg, and $250 was for the production of Grossmama.

Several questions were submitted to the jury, and the court's instructions, save in one particular, were not objected to by either party. If, therefore, the evidence justified the submission of these questions, the verdict has established that the following facts are true:

(1) The respective authors, or proprietors, of the plays in question deposited copies of the title with the Librarian of Congress.

(2) Within a reasonable time thereafter, two copies of each play were also deposited with the Librarian.

(3) These copies were printed from type set within the United States.

(4) When these copies were deposited, the plays had not been published, either here or abroad. They had been produced upon the stage in Germany before that time, but the jury were instructed that such production was not a "publication" that would defeat the author's right to subsequent copyright in the United States. This instruction was objected to by the defendant's counsel, but, as no argument in support of the objection was offered upon these motions, I shall regard it as abandoned.

(5) The verdict also established the fact that the plays publicly produced by the defendant under the titles of "Alt Heidelberg" and "Grossmama" were substantially identical with the copyrighted plays, and it followed, therefore, that infringement had been made out as charged in the plaintiff's statement of claim.

It is urged now by the defendant that there was no competent evidence of the facts stated in paragraphs 2, 3, 4, and 5, or, at all events, no sufficient evidence, and therefore that the defendant is entitled, either to a new trial, or to judgment notwithstanding the verdict. I agree with the proposition that the burden of proof is upon the plaintiff to prove his title to copyright, as well as to prove infringement (Chase v. Sanborn, Fed. Cas. No. 2,628), and that the requirements of the federal law are in the nature of conditions precedent and must be strictly complied with (Osgood v. Aloe Instrument Co. [C. C.] 83 Fed. 470). To use language employed by the court in the latter case:

"Unlike the laws governing the issue of patents to inventors, no certificate is made by the government conferring a copyright upon authors. They, therefore, have no grant conferring upon them in terms a monopoly in or to their productions, and therefore have nothing to show a prima facie case, like that which arises on a suit for infringement of letters patent upon the production of the patent itself. Authors take their rights under and subject to the law, and, when assailed, the burden is upon them to show literal compliance with each and every statutory requirement in the nature of conditions precedent."

But I think no one can examine the evidence that was offered in this case without coming to the conclusion that sufficient support to require submission to the jury was offered of each of the foregoing facts, and that the verdict was fully justified upon the merits. The chief reliance, now as well as at the trial, is placed upon questions of law, which it is argued require judgment to be entered for the defendant. These questions will receive attention in their order.

First, with regard to the copyright of Alt Heidelberg. This was taken out in the name of the plaintiff, as proprietor, under the real or sup-

posed authority of a contract entered into between the author and him, and the defendant contends that the true construction of this contract gives to the plaintiff nothing more than the stage rights in the play, and does not transfer the proprietary right in the book itself, so as to warrant the plaintiff in taking out the coyright in his own name. But this contention is, I think, answered by the decision of the Supreme Court in Belford v. Scribner, 144 U. S. 488, 12 Sup. Ct. 734, 36 L. Ed. 514. In that case Scribner & Co. had taken out a copyright as proprietors of a book of which Marion Harland was the author. In a suit for infringement the defendant set up, inter alia, that the plaintiffs were not the true owners of the copyright, because the author was a married woman when she made the controverted agreement with Scribner & Co., and that her husband was entitled by law to her earnings, of which she had no power to dispose; and contended further, that, even if he had ratified her agreement, the suit should have been in her name as owner in fact of the copyright. The Supreme Court agreed with Judge Blodgett that under the proof the suggestion of a possible marital interest by the husband in his wife's earnings was answered by the acquiescence of all the parties in the claim by Scribner & Co. that they were the proprietors of the copyright; and then went on to say:

"The opinion of the Circuit Court further correctly said: 'It is certain that, if there is any ownership in this work by copyright at all, it is in the complainant, in whose name the copyright was taken and now stands, so far as is shown by the proof in this case. If the law of the domicile of Mrs. Terhune (Marion Harland) entitles her husband to any part of her earnings, that is a matter to be settled between her husband and the complainant, and which the defendants cannot interpose as a defense to a trespass upon the complainant's property rights in this copyrighted book.'"

A similar remark may, I think, be made with reference to the copyright in Alt Heidelberg. The author and the plaintiff have acquiesced for several years in the plaintiff's proprietorship, and, if the true situation between them differs from the apparent situation, that is a matter for their own adjustment, and cannot be interposed as a defense by one who has infringed the rights that the plaintiff holds, either for himself or in trust for the author. The defendant will be fully protected by the verdict and judgment. No one but the plaintiff can sue for a violation of the copyright of Alt Heidelberg, for he is the sole legal proprietor thereof, and it is not easy to see what interest the defendant has in the ultimate disposition of the penalties that may be recovered in the present suit.

But the situation is radically different in relation to the copyright of Grossmama. This was taken out in the name of the author himself, and presumably, therefore, he continues to be the owner, unless there is proof that he has parted with his title. Upon this subject evidence was offered which must now be considered. Under date of October 17, 1898, a written contract was entered into between the author, Max Dreyer, and the plaintiff, which was somewhat crudely translated at the trial as follows:

"Contract between Max Dreyer, in Berlin, Germany, on the one side, and Emanuel Lederer, in New York, the other party.

"On the 17th of October, 1898, paying each other one dollar in hand, the following contract has been agreed upon and executed as follows: The said Max Dreyer sells to Emanuel Lederer the play written by him entitled Grossmama, in four acts, the original manuscript, the score, orchestration, songs, and words of the same, in the German and English language, for America and Canada.

"The sense of this agreement is that the said Emanuel Lederer is the owner, for the above mentioned countries, solely and exclusively of the within named stage work.

"Clause 2nd. Emanuel Lederer herewith buys the play of Grossmama and obligates himself to pay to Max Dreyer in consideration of that sale of the play, the following payments, viz.: two-thirds of all royalties coming due through performances of the play by contract or otherwise.

"Clause 3rd. Emanuel Lederer obligates himself during the term the play is produced by himself, or through license of his, to Theodore Entsch in Berlin, monthly statements, and all moneys due.

"Clause 4th. In case of delay or refusal of Emanuel Lederer to turn in all the moneys due Max Dreyer, with statements thereto, the validity of the contract shall cease immediately to this stage work.

"Clause 5th. The said Max Dreyer agrees to have the within named play in order to enjoy the protection of the American law copyrighted prior to its appearance in the book trade.

"Clause 6th. Emanuel Lederer herewith acquires the sole and exclusive right of translation of said stage work into the English language, for the use in America and Canada, and the cost thereof to be deducted from the royalties herein stated. But these deductions may only be made of moneys accrued from collected royalties for English or German performances, and the cost of translation shall not exceed the amount of thirty dollars for each act.

"Clause 7th. Emanuel Lederer loses all rights whatsoever to this stage work in case it should not be produced within three years, or sold or contracted for productions. But said Max Dreyer is to inform Emanuel Lederer in writing at least six weeks prior to the termination of these three years, of his intention, whether he wants to differently dispose of the same, in case it should not have been produced, sold, or otherwise contracted for within the above named six weeks prior to the expiration of the three years.

"Clause 8th. * * *

"Clause 9th. Emanuel Lederer takes upon himself to prosecute all persons legally, who attempt to produce said work without his consent, without making any claim toward Max Dreyer for reimbursement of his outlays in fees, costs of proceedings, and whatever connected with the prosecution of that case.

"Clause 10th. In case of infringement of either party of the foregoing contract, the sum of five hundred dollars fine is to be paid to each other in liquidation according to law.

"Clause 11th. The aforesaid contract is binding for both parties, as well as their assigns and rightful heirs.

"In witness whereof both parties signed on the above date the foregoing contract, after being read and acknowledged, with own hand and seal and signature. Then it is signed, sealed and delivered in presence of."

Taken as a whole, this agreement seems to lack certainty upon the point now in dispute. It is susceptible of two constructions, one supporting the plaintiff's contention that it gives him the proprietorship of the whole work, and the other construction upholding the position that he only acquired the stage right, the right to produce the play or to license its production. The right to produce the play is granted by section 4952 to the owner of the copyright in the book itself, but the right of production is made an incident to the ownership of the copyright, and is not the subject of separate statutory protection, although it may be assigned to one person while the right to print, etc., resides in another. As was said in Carte v. Ford (C. C.) 15 Fed. 442:

> "Under the copyright laws of the United States any citizen or resident of the United States who is the author of any dramatic composition * * * may copyright it, and he then has given him by the statute, two distinct and separable rights—one, the sole right to print and sell copies of the words and music, and the other, the sole right to publicly perform it, and doubtless he could assign to one person the right to print, and reserve, or grant to a different person, the right to publicly perform his composition."

Without discussing the details of the contract with Dreyer, I think that its total effect is to give to the plaintiff no more than the stage right; and, indeed, it may be a question whether the agreement was intended to go further than to confer upon the plaintiff a legal status as the agent of the author. But, however that may be, the title to the copyright was certainly in Dreyer himself, and I see no escape from the conclusion that it was therefore necessary to sue for infringement in his name. The legal cause of action accrued to him, and could not be presented in the same suit with a cause of action that accrued in a wholly different legal right to another person. For these reasons, I am of opinion that the verdict cannot be sustained for the penalties that were allowed for the production of Grossmama, and that judgment should only be entered for $200, the penalties allowed for infringement of the other copyright. But, as this conclusion is practically equivalent to a nonsuit, so far as Grossmama is concerned, it must be understood that the entry of judgment for $200 only is without prejudice to the right to bring a proper suit for the violation of the copyright taken out in the name of Max Dreyer.

A word or two may be added concerning an objection that was urged in argument about the lack of competent evidence to prove that the books deposited with the Librarian of Congress as copies of Alt Heidelberg were substantially identical with the copies that were offered in evidence at the trial. Reliance is placed on a dictum of the Supreme Court in Merrell v. Tice, 104 U. S. 557, 26 L. Ed. 854. The question there was whether an unsigned memorandum—"Two copies of the above publication deposited December 6, 1876"—at the foot of the Librarian's certificate concerning the deposit of a title was competent evidence that the deposit of the two copies had been made. The court decided that it was not competent, and in the course of the discussion used the following language:

> "Then, what is competent proof of such a deposit? If, after complying with all the requisite conditions, the law had authorized letters patent for the copyright to be issued to the proprietor, such letters would be competent, if not conclusive, evidence that the conditions had been complied with. But no such letters are issued in the case of copyrights. It is contended, indeed, that the Librarian's certificate answers the same purpose. But it is plain that this certificate was only an exemplification of the record required to be made on the filing of the title before publication. Its form, as prescribed by law, and its contents as shown by the copy produced in evidence, show that it relates to nothing else. The publication of the book, and the deposit of copies thereof, may not take place until the lapse of months afterward. The certificate, therefore, has no relation to the deposit of the books. The record of which it is an exemplification is made without reference to any such deposit."

What follows contains the dictum in question:

> "Whether, after the deposit has been made, the certificate of the Librarian, under his official seal, that the books were deposited on such a day, would be

competent evidence of the fact, is not now the question; and it may admit of considerable doubt. Perhaps a certificate of the Librarian attached to a copy of the book, certifying that two copies of the same book, or of which that is a true copy, were deposited in his office on such a day, would be competent evidence, inasmuch as the Librarian's office is a public one; the copyright books deposited with him are quasi records, kept in his custody for public examination—one object, no doubt, being to enable other authors to inspect them in order to ascertain precisely what was the subject of copyright. But we express no opinion whether such a certificate would be competent or not. In the present case no such certified copy of the books deposited, nor a certificate of the fact that they were deposited, was adduced in evidence. The memorandum under the certificate had no validity as evidence. It might have been put there by any person. It would be unsafe to hold that a memorandum under a certificate, or indorsed upon it, is part of the certificate."

But the same court, in Belford v. Scribner, 144 U. S. 505, 12 Sup. Ct. 739 (36 L. Ed. 517), decided that a signed memorandum—"Two copies of the above received November 15, 1880. A. R. Spofford, Librarian of Congress"—which was made upon a letter addressed to the Librarian by the proprietor of the copyright, was competent evidence that two copies of the book referred to in the letter were duly deposited, although the memorandum was not under seal. In the present case, the Librarian's certificate was an official paper in the usual precise form, and there was other evidence that the books deposited and the books offered in evidence were substantially identical, which, although it was slight, was sufficient in my opinion to require its submission to the jury, and to justify the verdict. There could not be the least doubt, I think, in the mind of any one who heard the trial, that the play produced by the defendant was Foerster's Alt Heidelberg.

The defendant's motions for a new trial and for judgment notwithstanding the verdict are refused, and to the refusal of judgment an exception is sealed. Judgment for $200 may be entered upon the verdict for the infringement of the copyright of Alt Heidelberg.