HUEBSCH v. ARTHUR H. CRIST CO.

(District Court, N. D. New York. January 2, 1914.)

**1. COPYRIGHTS (§ 83*)—ACTIONS—SUFFICIENCY OF EVIDENCE.**

In an action for infringement of a copyright, evidence *held* sufficient to show that the copyrighted book was printed from plates made from type set within the limits of the United States.

[Ed. Note.—For other cases, see Copyrights, Cent. Dig. §§ 74–76; Dec. Dig. § 83.*]

**2. COPYRIGHTS (§ 83*)—ACTIONS—SUFFICIENCY OF EVIDENCE.**

Under the statute in force in 1903 and 1904 which provided that no person should be entitled to a copyright unless he should, not later than the day of the publication, deliver to the librarian of Congress, or deposit in the mail addressed to him, two copies of the copyrighted book, and providing that such two copies shall be printed from type set within the limits of the United States or from plates made therefrom, in a suit for infringement, evidence that a printing office within the United States was employed to print the book, and that it was afterwards received therefrom printed and ready for the binder, shows sufficiently that the book was printed from type set within the United States or from plates made therefrom, and the possibility that the work was done outside the United States need not be negatived.

[Ed. Note.—For other cases, see Copyrights, Cent. Dig. §§ 74–76; Dec. Dig. § 83.*]

**3. COPYRIGHTS (§ 83*)—ACTIONS—SUFFICIENCY OF EVIDENCE.**

In a suit for infringing a copyright, evidence in connection with the certificates of the librarian of Congress and the register of copyrights *held* sufficient to show the deposit of the title of the book before publication and the deposit of two copies thereof on the day of publication with the librarian of Congress, as required by the statute in force in 1903 and 1904.

[Ed. Note.—For other cases, see Copyrights, Cent. Dig. §§ 74–76; Dec. Dig. § 83.*]

**4. COPYRIGHTS (§ 82*)—ACTIONS FOR INFRINGEMENT—BURDEN OF PROOF.**

In a suit for infringing a copyright, though there was no denial that complainant's book was duly copyrighted, he was bound to make proof of his copyright.

[Ed. Note.—For other cases, see Copyrights, Cent. Dig. §§ 72, 73; Dec. Dig. § 82.*]

**5. COPYRIGHTS (§ 83*) — ACTIONS FOR INFRINGEMENT — SUFFICIENCY OF EVIDENCE.**

In a suit for profits and damages from the infringement of a copyright, evidence *held* to show negligence on the part of defendant and that it was defiant after having its attention called to the infringing character of its publication.

[Ed. Note.—For other cases, see Copyrights, Cent. Dig. §§ 74–76; Dec. Dig. § 83.*]

**6. COPYRIGHTS (§ 87*)—ACTIONS FOR INFRINGEMENT—ACCOUNTING.**

Under a bill alleging the infringement of a copyright and asking for an accounting of the profits arising from the sale of defendant's piratical leaflet, and that defendant be required to pay such damages as complainant had suffered, as well as all profits which defendant had made, the court could not arbitrarily find the amount of damages and profits, and fix the amount or impose penalties, but would refer the case to a master to take and state an account, unless the parties agreed otherwise.

[Ed. Note.—For other cases, see Copyrights, Cent. Dig. § 81; Dec. Dig. § 87.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

7. COPYRIGHTS (§ 87*) — ACTIONS FOR INFRINGEMENT — SUFFICIENCY OF EVI-
DENCE.
  In a suit for infringement of a copyright, where complainant proved
his copyright, that all books printed, published, and sold by him bore the
copyright notice required by law on the page following the title page, and
it was admitted that defendant had printed and sold a leaflet which was
a copy of a substantial part of complainant's book, complainant was en-
titled to an accounting for profits and damages.
  [Ed. Note.—For other cases, see Copyrights, Cent. Dig. § 81; Dec. Dig.
§ 87.*]

8. COPYRIGHTS (§ 73*)—INFRINGEMENT—ACTIONS—RELIEF.
  Act March 4, 1909, c. 320, § 25, 35 Stat. 1081 (U. S. Comp. St. Supp.
1911, p. 1480), providing that the infringer of a copyright shall be liable
to an injunction, to pay the copyright proprietor such damages as he may
have suffered, as well as all profits made by the infringer, and that the
court may also, in its discretion, allow certain specified amounts for each
infringing copy, applies to infringements of copyrights obtained prior to
its passage, where the infringements were subsequent thereto.
  [Ed. Note.—For other cases, see Copyrights, Cent. Dig. §§ 66, 71; Dec.
Dig. § 73.*]

In Equity. Suit by Benjamin W. Huebsch against the Arthur H.
Crist Company. Decree for complainant.

The bill was filed June 4, 1912, to recover profits and damages by
reason of alleged infringement of copyright for book, "Moral Educa-
tion," of which Edward Howard Griggs was the author and which
was copyrighted about September 17, 1903, all rights thereunder hav-
ing been duly assigned to the complainant on or about May 9, 1912,
together with the right and rights of action for infringement.

H. C. Sholes, of Utica, N. Y. (Alvin M. Higgins, of New York City,
of counsel), for complainant.

C. J. Fuess, of Utica, N. Y., for defendant.

RAY, District Judge. The bill of complaint alleges: That both the
complainant and defendant are publishers and printers engaged in
the business of making, editing, preparing, printing and publishing,
and selling books, pamphlets, leaflets, etc.; the former having its
principal place of business at New York City and the latter at Coop-
erstown, N. Y. That since September 17, 1903, one Edward Howard
Griggs has from time to time edited, prepared, and published a book,
or work, which had not then been published, entitled "Moral Educa-
tion," and generally known and labeled on the back as "Moral Educa-
tion," and that said Griggs was the author and proprietor of such book,
and, desiring to secure a copyright upon the same, deposited in the
mail at the city of New York, addressed to the librarian of Congress
at Washington, D. C., a printed copy of the title of said book, and that
December 5, 1904, not later than the day of the publication thereof, he
deposited in the mail two copies of such copyrighted book addressed
to the said librarian at said place. Also, "that such copyrighted book
was printed from plates made from type set within the limits of the
United States." That Griggs from time to time after said 17th day
of September, 1903, prepared, published, and became and was the
author of such book, all of which was written, prepared, arranged, and

published by and under the direction of said Griggs, and that such book contains a large amount of original matter, and that same continued to be the property of said Griggs, and that "said author and proprietor applied for and obtained the copyright therefor as aforesaid." That by agreement with Griggs, before the infringement complained of, the complainant had undertaken and became interested in and assumed a part of the risk and responsibility of the publication of such book, and has ever since continued and continues to be so interested, and had and has incurred and been at great expense to make and establish himself as the sole publisher of said book and work, and that it is of great financial interest and prestige to complainant to be known and recognized as the sole publisher of such book "Moral Education."

The bill then alleges the assignment to the complainant of said book copyright and the claim, etc., for damages for infringement. That Griggs and complainant printed and sold a large number of copies and on the back of the title page of each volume inserted the information and notice of such copyright required by law.

The bill then alleges: That for several years last past defendant has and now publishes and sells a leaflet known as, "No. 9. Moral Education Through Work, by Edward Howard Griggs," of which it publishes large numbers in competition with said copyrighted book. That defendant, with fraudulent intent, impressed a notice of copyright on said uncopyrighted leaflets.

A copy of the leaflet is attached to the bill, and a copy of the book is also made a part thereof. The book, "Moral Education," contains about 296 or more pages of printed matter and is divided into chapters or subdivisions or subjects and "X," pages 86 to 100 inclusive, is headed "Moral Education Through Work." In short, the defendant has taken and published, printed and sold, 15 pages of this book in the leaflet form referred to. This is a substantial part of the book.

The defendant puts in a plea by way of answer as follows:

"This defendant by protestation, not confessing or acknowledging all, or any of the matters and things in the said plaintiff's bill of complaint mentioned and contained to be true, in such sort, manner, and form as the same are therein set forth and alleged, for plea to the whole of said bill, by his solicitor, C. J. Fuess, comes and defends the wrong and injury when, etc., and says that he is not guilty of the supposed grievances above laid to his charge, or any of them, or any part thereof in manner and form as the said plaintiff has above complained against him, and of this defendant puts himself upon the country. All of which matters and things this defendant doth aver to be true, and he pleads the said matters as a bar hereto and prays that judgment of this honorable court whether he should be compelled to make any other or further answer to the said bill and prays to be hence dismissed with his costs and charges in that behalf most wrongfully sustained."

Evidence was taken before an examiner, and the case came on for a hearing. The defendant raises the point that the complainant has not proved his case, in that he has not shown a valid copyright or any copyright of the book "Moral Education." The specific points presented are that sending by mail of the copy of the title page and of the two copies of the book when printed is not duly proved, and (2) that it is not proved that the said book, "Moral Education," was

printed from plates made from type set within the limits of the United States.

[1, 2] .The copyright law in force in 1903 and 1904 provided that the author or proprietor of any book shall, "upon complying with the provisions of this chapter, have the sole liberty of printing, reprinting, publishing, completing, copying, executing, finishing, and vending the same."

Also:

"No person shall be entitled to a copyright unless he shall, on or before the day of publication in this or any foreign country, deliver at the office of the librarian of Congress, or deposit in the mail within the United States, addressed to the librarian of Congress, at Washington, District of Columbia, a printed copy of the title of the book, * * * for which he desires a copyright, nor unless he shall also, not later than the day of the publication thereof in this or any foreign country, deliver at the office of the librarian of Congress, at Washington, District of Columbia, or deposit in the mail within the United States, addressed to the librarian of Congress, at Washington, District of Columbia, two copies of such copyrighted book * * * provided, that in the case of a book, * * * the two copies of the same required to be delivered or deposited as above shall be printed from type set within the limits of the United States, or from plates made therefrom." Act March 3, 1891, c. 565, §§ 1, 3, 26 Stat. 1106 (U. S. Comp. St. 1901, pp. 3406, 3407).

The evidence on the subject of the printing of the two copies of this book, "Moral Education," and the whole of it, is as follows (Benjamin W. Huebsch, the complainant, being the witness):

"Q. Who attended to the copyrighting of the book entitled 'Moral Education,' by Edward Howard Griggs? A. I did.

"Q. Was such copyright book, 'Moral Education,' printed from plates made from type set within the limits of the United States? A. It was."

On cross-examination on this subject, the witness testified:

"XQ. Did you see 'Moral Education' being printed? A. I am unable to state definitely, at this time, whether I did or not.

"XQ. When did you first see the plates from which it was printed? A. I am not sure that I ever saw the plates.

"XQ. Did you ever see the type from which the plates were made? A. Probably not. * * *

"XQ. Where did you have the book 'Moral Education' printed? A. I don't remember, and I have made use of a dozen or more press rooms, by which I mean printing offices, in the last ten years. The book was manufactured in New York City.

"Recross-Examination:

"XQ. Who were the printers that printed the book 'Moral Education'? A. I cannot tell without consulting my manufacturing record.

"XQ. Do you know who set the type from which the plates of this book was made? A. I am not certain, but I think Redfield Bros., New York City."

Does this, taken together, furnish evidence that these two copies of this book in question, deposited with the librarian of Congress, were printed from plates made from type set within the limits of the United States? First the witness says they were. But, did he know? Did he know any fact or facts from which it can be inferred that he did or could know? On the other hand, does it not appear that the witness did not know and could not know, except by mere hearsay? First, he says that he attended to the copyrighting, but this does not prove or tend to prove that he knew where the type was set from which the

plates were made. Second, the witness is unable to say that he saw the book being printed. Third, he is not able to say that he ever saw the plates from which the books were printed. Lastly, he never saw the type from which the plates were made. However, he says the books were manufactured, that is, printed and bound, in the city of New York. However, he could not state which one or ones of the ten or a dozen press rooms or printing offices employed by him printed the books. To repeat:

"Q. Do you know who set the type from which the plates of this book was made? A. I am not certain, but I think Redfield Bros., New York City."

I am of the opinion that the evidence as a whole is to this effect: "I attended to the copyrighting of this book, the printing of the books and copies thereof, employed the printing houses that did the work, and, while I am not certain which of these houses set the type from which the plates were made from which the books were printed, my best recollection is (I think) that they were set by Redfield Bros. of New York City." But how could he know if he neither saw the plates nor the type? It is fair to say that the evidence shows the witness employed Redfield Bros. to set type and make plates therefrom to be used in printing these books; that subsequently the books came out duly printed. It is urged that the fair and legitimate inference and finding is that the type was set and plates made by the publishing house employed to do the work of printing the books and which actually did produce the books printed; that the fair inference and resultant finding is that the work was done in the city of New York where the firm of Redfield Bros. did business. It is contended that with this proof in the case there is no justification for the court to guess, surmise, or speculate. That possibly the house employed to do the work had it, or any part of it, done outside of the United States. If A. goes into the Tribune office, or Sun office, or World office, and contracts for the printing and publication of a book of which he is the author, which he desires to copyright and put on the market, and the book printed and ready for the binder comes to him in due time; is not proof of these facts sufficient evidence that such book was printed from type set or plates made from type set within the United States? Must witnesses be called who either did the work or saw it done, to testify that the type from which the plates were made was set in the United States? It seems to me a fair and just inference and conclusion that the work was done in that office. It is true that the work may have been done outside the United States, but I do not think the complainant called upon to negative that possibility.

In Osgood v. A. S. Aloe Instrument Company (C. C.) 83 Fed. 470, it was held:

"An author suing for infringement of a copyright has the burden of showing a literal compliance with each and every statutory requirement in the nature of conditions precedent to the acquisition of a valid copyright."

This case has been cited and followed in Saake v. Lederer, 174 Fed. 135, 136, 98 C. C. A. 571 (C. C. A. 3d Circuit); Louis De Jonge &

Co. v. Brenker & Kessler Co., 191 Fed. 35, 36, 111 C. C. A. 567; Lederer v. Saake (C. C.) 166 Fed. 810, 811; Freeman v. Trade Reg. Inc., 173 Fed. 419; and G. & C. Merriam Co. v. United Dictionary Co. (C. C.) 140 Fed. 768, 769. The case is in line with the decisions of the Supreme Court of the United States. Merrell v. Tice, 104 U. S. 557, 26 L. Ed. 854.

[3] The defendant also contends that the complainant has failed to make his case in that the certificates of the deposit of the two books with the librarian of Congress are not competent evidence of such deposit or mailing. In Merrell v. Tice, supra, the court held that the complainant in a copyright case could not recover without proving the deposit of the books as required by the copyright statute, and as to the certificate of the librarian under seal left it a query:

"Is the certificate of the librarian, under his official seal, that two copies were so deposited, competent evidence of the fact?"

See pages 560, 561, of 104 U. S., 26 L. Ed. 854.

In Lederer v. Saake (C. C.) 166 Fed. 810 (J. B. McPherson, D. J.), it was held that:

"The certificate of the librarian of Congress that two copies of a book were deposited with him is competent evidence of such fact in an action for penalties for infringement of the copyright of such book, and is sufficient where the identity of such copies with the book in suit is shown."

The judgment in this case was reversed (Saake v. Lederer, 174 Fed. 135, 98 C. C. A. 571), but not on this ground, although the court said:

"When suit for infringement is brought, the librarian's certificate does not per se establish the copyright; but the burden rests on the plaintiff to show compliance with statutory requirements as conditions precedent."

The court cited Merrell v. Tice, and Osgood v. Aloe Co., supra, as authority.

In Belford v. Scribner, 144 U. S. 488, 505, 506, 12 Sup. Ct. 734, 739 (36 L. Ed. 514), the court said:

"It is also contended that the copyright of 1880 was invalid because no sufficient proof appeared that two copies of that book were duly deposited. We are of opinion that the certificate of the librarian of Congress set forth in the margin, as printed in the record, that two copies of the new edition of the plaintiff's copyrighted book were received by him November 15, 1880, which was within ten days after the publication, was competent evidence, although the certificate was not under seal."

If the certificate is competent evidence, it ought to be true that it establishes what it states in the absence of contradiction. In that case the document was as follows:

"New York, Nov. 15th, 1880.

"Mr. A. R. Spofford, the Librarian of Congress, Washington, D. C.—Dear Sir: We send you to-day by mail (2) two copies of Marion Harland's 'Common Sense in the Household,' new edition, to complete the copyright for that book. The certificate for title entry is numbered 14239 L. Please acknowledge their receipt.

"Yours truly, Charles Scribner's Sons.

"2 copies of the above received Nov. 15, 1880.

"A. R. Spofford, Librarian of Congress."

On the subject of depositing the title of the book and thereafter prior to the publication of the book depositing the two copies thereof required to be deposited, the evidence of the complainant is as follows:

"Q. Did you deposit in the mail within the United States a printed copy of the title of the book 'Moral Education,' and, if so, when, where, and to whom did you address such communication? A. My best recollection of the details is that I complied with the requirements making application, by submitting either a printed title page or a typewritten copy of the title page to the librarian of Congress, or with the register of copyrights at Washington from New York, N. Y., at the post office in that city, prior to the publication of the book, during 1903.

"Q. Did you send two copies of the book to be copyrighted; if so, from and where and to whom? A. I sent the two copies necessary to complete the copyright from New York, N. Y., to the library of Congress, addressing them to the librarian of Congress or to the register of copyrights, whichever one was then authorized to receive such copies. * * *

"Q. Within what time, after you first published the book 'Moral Education,' did you deliver to the librarian of Congress, if you did deliver it, or deposit in the mail addressed to the librarian of Congress, at Washington, D. C., two copies of the book to be copyrighted under the name 'Moral Education,' by Edward Howard Griggs? A. On the day of publication.

"Q. Were these copies of the best printed, complete edition issued? A. Yes."

And on cross-examination the witness testified as follows:

"Q. Did you personally deposit in the post office in New York City the two volumes that you stated were deposited on the day of publication? A. I am unable to state positively that I personally deposited the copies.

"Q. Did you personally deposit the title page in the post office in New York City at the time you stated it was deposited? A. I do not know."

In addition to this evidence, the complainant put in evidence the following:

"Class A, XXc. No. 68549.                                                                   E
                       "Library of Congress, to wit:

"Be it remembered, that on the seventeenth day of September, 1903, Edward Howard Griggs, of Montclair, N. J., hath deposited in this office the title of a book, the title of which is in the following words, to wit: Moral Education, the right whereof he claims as author and proprietor in conformity with the laws of the United States respecting copyrights.
"Office of the Register of Copyrights, Washington, D. C.
                                      "Herbert Putnam, Librarian of Congress,
                                      "By Thorwald Solberg, Register of Copyrights.

"I hereby certify that the foregoing is a true copy of the original record of copyright.

"In witness whereof, the seal of this office has been hereto affixed this sixteenth day of June, 1913.          Thorwald Solberg, Register of Copyrights.
"Copyright Office of the United States of America, Washington, D. C. [Seal.]"

          "Copyright Office of the United States of America.
                      "Library of Congress, Washington.

"I hereby certify that two copies of the book entitled Moral Education, registered for copyright on September 17, 1903, Class A, XXc. No. 68549, were received as copyright deposits on December 5, 1904.

"In witness whereof, the seal of this office has been hereto affixed this sixteenth day of June, 1913.
                        "Thorwald Solberg, Register of Copyrights. [Seal.]"

By chapter 230, § 91, 16 Stat. 213, Act of July 8, 1870, it was made the duty of the librarian of Congress to give the certificate of the deposit of the title.

In Callaghan v. Myers, 128 U. S. 617, 655, 656, 9 Sup. Ct. 177, 187 (32 L. Ed. 547), the court said and held:

"Section 4 of the act of 1831 requires the clerk to give a copy of the title as deposited and recorded, under the seal of the court, to the author or proprietor who deposits it whenever he shall require the same. Necessarily, such copy is sufficient prima facie evidence of the deposit of the title. Such a copy was given in regard to each of the volumes in question here. On each of these papers the memorandum of the fact and of the date of the deposit of the work, signed by the clerk, was written. The clerk was the officer required to receive the deposit of the work. · He was not required to keep a record of such deposit; and he was required to transmit the works so deposited to the Secretary of State, at least once a year. The memorandum in the present case of the fact and date of the deposit, purporting to be signed by the clerk, must be regarded as a sufficient prima facie certificate of such deposit, and as competent evidence of the fact and of the date, without further proof of the signature of the clerk, that being on the same paper with his signature as clerk to the certificate of the copy of the record of the deposit of the title, and it being open to the defendants to show that his signature to the memorandum was not genuine.

"We do not think the present case is governed by the decision in Merrell v. Tice, 104 U. S. 557 [26 L. Ed. 854]. In that case the librarian of Congress had given a certificate to a copy of the record of the deposit of the title of the book. On that paper was written a memorandum in these words, 'Two copies of the above publication deposited' on a date given. This memorandum was not signed by the librarian of Congress. This court held the memorandum not to be competent as proof of the deposit of the two copies of the book, on the ground that it was not a certificate of that fact. We are of opinion that the memorandum in the present case, purporting to be signed by the same clerk, is substantially a certificate of the fact and date of the deposit of the work, written by him on the same paper with the other certificate, and that it is not open to the objection which obtained in the case of Merrell v. Tice."

I think this evidence and that previously quoted in connection with the certificates, Exhibits 1 and 2, is sufficient to show the deposit of the title of the book September 17, 1903, and the deposit of the two copies of the book itself December 5, 1904, the day of its publication.

[4] In truth, there was no denial that the book was duly copyrighted, but the complainant was, of course, bound to make the proof.

### Damages.

[5] The bill does not in terms ask for an injunction. It is true that the defendant was defiant at first. On the outside first page of the first edition of the leaflet we find the following:

"No. 9. Moral Education Through Work, by Edward Howard Griggs, published by Crist, Scott & Parshall, Cooperstown, N. Y., Price 3¢ each; 80¢ per 100, postpaid."

On the outside first page of the second edition, we have the same, except that, in place of "Published by Crist, Scott & Parshall, Cooperstown, N. Y.," we find the following: "Copyright by The Arthur H. Crist Co., Cooperstown, N. Y., 188 Main St."

The defendant claims and Mr. Crist says under oath that this was an error of the printers who took and issued one of their set forms on this leaflet by mistake. Mr. Crist also claims that he believed the assignment from Mario C. Woodallen to Crist, Scott & Parshall of all the "leaflets, or booklets, copyrights, royalties and rights of action for the leaflets or booklets heretofore published and sold by the Woc ·-

Allen Publishing Company and listed in their advertising announcements from numbers one to thirty as per the attached memorandum," and dated February 28, 1907, included and carried the leaflet, "Moral Education Through Work." In fact, the said memorandum includes no such leaflet. The memorandum attached to such assignment omitted Nos. 8, 9, 10, and 16. As early as January 25, 1912, the attention of the Arthur H. Crist Company was called to this leaflet and its infringing character, and in reply that company said:

"We acquired this pamphlet from Dr. Mary Wood Allen at the same time that we took her books. We do not know what arrangements Dr. Wood Allen had made with the author or publisher, but we always found Dr. Wood Allen very careful in these matters, so we presume that she had the proper authority for using the matter published in this leaflet. We know that Dr. Wood Allen put this little leaflet before the public quite a long time before we had anything to do with her publications."

Later, and April 17, 1912, the defendant wrote Mr. Higgins, who represented the complainant, as follows:

"Cooperstown, N. Y., Apr. 17, 1912.

"Mr. Alvin M. Higgins—Dear Sir: We now wish to answer your letter of March 12th in full—the delay in taking this up being due to severe illness in the family as already explained.

"1. You ask what assurance was made to us by the Wood-Allens. In reply to that question we herewith enclose you a copy of the contract made between us and the Wood-Allens when we purchased these leaflets and the rights to publish the same. We believe you will find this copy a pretty complete answer to your question.

"2. The next paragraph in your letter assumes a great deal. If you had any personal knowledge of our company and the men who comprise it, we do not believe you would have written this paragraph in quite the language which it is couched. After purchasing the Wood-Allen rights in these leaflets and copyrights, we have since had the copyrights taken out in our own name which we believe we have a perfect right to do, after purchasing such rights from other people.

"3. Your next paragraph again makes a very strong assumption of unfair intention and purpose on our part. We repeat however what we said that the sale of this leaflet has been so small that if we were the ones at fault and you carried out your original threat to make us account for every cent received, you would be somewhat astonished and chagrined to find what a tempest in a teapot the whole thing had been. We offered the page advertisement in future editions simply as a matter of courtesy and good will to Mr. Huebsch. As our intention in this matter has been entirely misunderstood and misinterpreted, we herewith withdraw that offer.

"For further responsibility in this matter we refer you to Mr. Wood-Allen, who sold us the leaflets and the rights thereto and guaranteed to 'defend the same against any person or persons whomsoever claiming the same.'

"Very respectfully yours, The Arthur H. Crist Co.
"Arthur H. Crist."

Mr. Crist testifies he dictated "which we believed we have a perfect right to do," not "believe." This letter, in any event, is defiant and assumes a purchase of the leaflet in question, when the assignment itself, on its face, shows that it was not included. At best there was negligence on the part of the defendant.

[6] The bill asks for an "account of the profits arising from the sale of said piratical leaflet so far as any profits have been made," and that defendant be required to pay over to your orator such damages

as your orator may have suffered due to the infringement as well as all profits which the defendant, the infringer, shall have made from the infringement, in accordance with the copyright law," and also costs, etc.

[7] The evidence of Mr. Crist himself shows the printing and sale of the second editions of said infringing leaflet within the two years prior to the commencement of this action, June 4, 1912. In all the books "Moral Education" printed, published, and sold by complainant he had on the page following the title page, the words, "Copyright, 1903, by Edward Howard Griggs," as required by law. See Act June 18, 1874, c. 301, § 1, 18 Stat. 78. It was optional with the complainant to print the statement, "Entered according to Act of Congress," etc., or the words and figures "Copyright, 1903, by Edward Howard Griggs." See 3 U. S. Comp. St. 3411; Lithographic Co. v. Sarony, 111 U. S. 53, 55, 4 Sup. Ct. 279, 28 L. Ed. 349.

I think the complainant has made a case which entitles him to the relief prayed for, an accounting, etc., and it will be referred to a master to take and state the account of profits and damages unless the parties agree. The damages, etc., cannot be large. The leaflet sold for 3 cents per copy, while the book sold for $1.60 per copy, and it cannot be inferred that the sale of a leaflet prevented a sale of a copy of the book. The complainant is also entitled to full costs, and a reasonable attorney's fee will be added on the coming in of the master's report. Section 40, Act of March 4, 1909. As this bill of complaint is framed, this court cannot substitute an arbitrary finding of damages and profits and fix the amount or impose penalties. Stevens v. Gladding, 17 How. 447, 453, 15 L. Ed. 155; Callaghan v. Myers, 128 U. S. 617, 663, 9 Sup. Ct. 177, 32 L. Ed. 547; Root v. Railway Co., 105 U. S. 189, 193, 26 L. Ed. 975.

In 9 Cyc. 959, it is said, citing cases:

"The usual mode of ascertaining profits is by reference to a master to take evidence and report, although they may be ascertained from affidavits filed by the defendant."

In Patterson v. Ogilvie Pub. Co. (C. C.) 119 Fed. 451:

"The usual practice is to enter an interlocutory decree providing for an injunction and then send the matter to a master to take proof of damages and profits. Upon the return of the master's report, a final decree disposes of the question of damages."

[8] I think the provisions of section 25 of the Act of March 4, 1909 (35 Stat. 1075, c. 320 [U. S. Comp. St. Supp. 1911, p. 1472]), "An act to amend and consolidate the acts respecting copyright," apply in this case. It is immaterial, so far as the remedies provided by that act are concerned, that this copyright was obtained prior to the passage of that act. That section provides:

"That if any person shall infringe the copyright in any work protected under the copyright laws of the United States, such person shall be liable," etc.

It was competent for Congress to give additional or more severe or more drastic remedies for the infringement of copyrights theretofore granted. But, of course, the remedies would only apply in the case

of infringements committed after the act of 1909 went into effect. The assignment with a certificate of its record according to law was put in evidence.

There will be a decree accordingly.