**BUCK et al. v. CRESCENT GARDENS OPERATING CO. et al.**

No. 4666.

District Court, D. Massachusetts.

Aug. 1, 1939.

Guterman & Guterman and Samuel Berkett, all of Boston, Mass., for plaintiffs.

Daniel W. Donahue and Avery Dooley, Post & Carroll, all of Boston, Mass., for defendant John J. Hurley.

McLELLAN, District Judge.

This suit involves infringement of the copyrights on two popular songs. The plaintiffs are Gene Buck, as President of the American Society of Composers, Authors, and Publishers, Joe Davis, Inc., and Leo Feist, Inc. The Society is an unincorporated association, made up of composers, authors and their publishers, whose purpose is to protect the rights of its members in public performances of works secured by copyrights held by them. The plaintiff Buck sues in a representative capacity. The other plaintiffs are New York corporations, joined as owners, respectively, of the copyrights on the songs in question. For the propriety of suits of this character, see Buck et al. v. Royal Palms, Inc., D.C., 23 F.Supp. 29; Buck et al. v. Russo, D.C., 25 F. Supp. 317; Buck et al. v. Elm Lodge, Inc., 2 Cir., 83 F.2d 201. The Crescent Gardens Operating Company, a Massachusetts corporation, and John J. Hurley, a citizen of Massachusetts, were originally joined as defendants, but the bill was later dismissed as to the corporate defendant.

The plaintiffs' contention is that material and substantial parts of two copyrighted songs were played by an orchestra at a public dance hall in Revere, Massachusetts, known as the "Moorish Castle", without license from the Society, to whom exclusive rights to public performance had been assigned by the owners of the respective copyrights. The principal question raised by the defense is whether the defendant Hurley was responsible for infringements of this character at the "Moorish Castle", if any such occurred.

At the conclusion of the trial, which occurred some months ago, the parties expressed the view that the case might be terminated by compromise and only recently was the Court advised that negotiations for settlement had not borne fruit.

On March 16, 1936, a song entitled "Christopher Columbus," words by Andy Razaf, music by Leon Berry, was published by Joe Davis, Inc. At the bottom of the sheet appeared the words "Copyright 1936 by Joe Davis, Inc." Subsequently, two copies of the composition were duly sent to the Copyright Office, as required by statute, and a certificate of copyright issued.

On September 2, 1927, the plaintiff Leo Feist, Inc., published a song entitled "My Blue Heaven", words by George Whiting, music by Walter Donaldson. All copies of the song as published bore the notice "Copyright 1927 by Leo Feist, Inc." Subsequently, copies of the song duly sent to the Copyright Office, and a certificate of copyright issued for this song.

On November 21, 1935, the plaintiff Joe Davis, Inc., entered into an agreement for five years, to begin January 1, 1936, by which it assigned to the American Society of Composers, Authors and Publishers the exclusive right of public performance, with exceptions not here material, in works of which it was then the copyright owner, or of which it might become the owner during the term of the agreement. On December 30, 1935, the plaintiff Leo Feist, Inc. entered into a similar agreement with the Society for the same term.

In August, 1937, the local representative of the Society sent three letters to the defendant Hurley warning him that copyrights of members would be infringed unless a license from the Society was taken for the "Moorish Castle." The defendant was also furnished with a list of the members of the Society. No reply to these letters was received.

On the evening of May 21, 1938, Russell W. Rome, the New England District Manager of the Society, accompanied by his wife and by two employees of the Society, visited the "Moorish Castle". On that occasion an orchestra was playing and people who had paid an admission fee were dancing in the hall. During the evening the orchestra played publicly two choruses of "Christopher Columbus" and three choruses of "My Blue Heaven". I find that this constituted material and substantial portions of the copyrighted pieces.

While Rome was still in the ballroom he had a conversation with the defendant Hurley, during the course of which Hurley refused to take out a license from the Society. Upon being asked, "You are the operator of the place? I am talking to the right party?" he replied, "Yes, I am", and upon being asked, "You hire the orchestras?", he said, "Yes, I hire them. It is my place."

From the testimony of the defendant Hurley it appeared and I find that for a number of years he had been the manager of the ballroom known now as the "Moorish Castle", acting as such for a number of different corporations. At the time in question, the premises were owned by the Crescent Gardens Operating Company and leased by it to the defendant Hurley. Hurley then sublet the premises by oral lease to the

Moorish Castle Operating Company, a partnership, and apparently to other organizations and clubs. He paid $7,000 a year as rent to the landlord. It was not customary for him to give notice to the landlord of oral subleases of this character. By his arrangement with the Moorish Castle Operating Company he was to receive $15 a week to devote his full time to serving as manager, and was to receive in addition 25% of the gross over $30,000 for the year, a figure which was not attained either in 1937 or 1938. As manager for the Moorish Castle Operating Company, he engaged orchestras through a booking agent. He would arrange for the amount to be paid with the agent and would pay him the money. City and state licenses were issued in the name of the Moorish Castle Operating Company, but were applied for by Hurley as manager. The defendant further testified and I find that because of his control of the lease he could turn the operating company out at any time if they did not see fit to retain him as manager.

I conclude that copyrights on the songs "Christopher Columbus" and "My Blue Heaven" were valid, and that the right to perform these songs publicly for profit was validly assigned to the plaintiff Gene Buck and his associates. I further conclude that the rights of the plaintiff Buck and his associates were infringed on the evening of May 21, 1938, at the "Moorish Castle", and that the defendant Hurley is liable for this infringement.

One who hires an orchestra for a public performance for profit is not relieved from a charge of infringement merely because he does not select the particular program to be played. Irving Berlin, Inc., v. Daigle, D.C., 26 F.2d 149; Dreamland Ball Room, Inc., et al. v. Shapiro, Bernstein & Co., 7 Cir., 36 F.2d 354; Buck et al. v. Newsreel, Inc., et al., D.C., 25 F.Supp. 787; Buck et al. v. Jewell-LaSalle Realty Co., 283 U.S. 191, 51 S.Ct. 410, 75 L.Ed. 971, 76 A.L.R. 1266. It is the contention of the defendant that he should be relieved of liability because he was acting only as agent for the Moorish Castle Operating Company. However, it is clear that he was in sole charge of the operation of the hall; he spoke of the hall as "my place"; he alone made arrangements for hiring the orchestra on the night in question; and finally, due to the fact that he held the lease to the premises and sublet it only in an informal way, he was able to turn the company out of the hall at any time if it failed to retain him as manager and presumably for other acts inconsistent with his wishes. Moreover, copyright infringement being a tort, an agent may be equally liable with his principal in many cases. See Amdur, "Copyright Law and Practice", Page 945 and cases there cited. See, also, Leon et al. v. Pacific Telephone & Telegraph Co., 9 Cir., 91 F.2d 484. This is such a case. The defendant Hurley is responsible for the infringement which here occurred.

The conclusion is that the plaintiffs shall have the injunctive relief sought, the minimum statutory allowance of $250 on each count, and costs to be taxed by the Clerk, with costs under the circumstances of this case are not to include an attorney's fee which under the statute the Court may but is not required to award. A decree providing for such injunction, adjudging the defendant indebted to the plaintiffs in the sum of five hundred dollars ($500) and costs, and providing for the issuance of an execution therefor, may be entered.