**SHELDON et al. v. MOREDALL REALTY CORPORATION.**

District Court, S. D. New York.
Sept. 16, 1939.

O'Brien, Driscoll & Raftery, of New York City (Arthur F. Driscoll and Edward J. Clarke, both of New York City, of counsel), for complainants.

J. Robert Rubin, of New York City (Samuel D. Cohen and Earle L. Beatty, both of New York City, of counsel), for respondent.

LEIBELL, District Judge.

Complainants by this motion bring up for review the report of the special master and the exceptions filed thereto. The matter of an allowance to the special master for his services and the fixation of a reasonable attorney's fee for the attorneys for the successful complainants are also before the Court.

The respondent, Moredall Realty Corporation, is the lessee of the land and the owner of the Capitol Theatre building at 51st Street and Broadway, New York City. A motion picture entitled "Letty Lynton" was exhibited at that theatre, of which respondent is also the operator, for two weeks in the Spring of 1932, together with other attractions. Complainants were the authors and copyright owners of a play known as the "Dishonored Lady". Metro-Goldwyn Pictures Corporation produced the motion picture "Letty Lynton". The respondent in this action is asked to account for the profits it derived from the exhibition of the picture on the ground that the picture infringed complainants' play.

In an action in this Court by these same complainants against the Metro-Goldwyn Pictures Corporation and others, it has been held by the Circuit Court of Appeals (Sheldon v. Metro-Goldwyn Pictures Corp., 2 Cir., 81 F.2d 49) that the picture infringed the copyrighted play. That action will hereinafter be referred to as the principal action. A reference to determine complainants' damages in said principal action and all the gains and profits of the respondents from the infringement was ordered by an interlocutory decree. The special master in that action reported the gains and profits of the said respondents from the infringing picture at almost $600,000, all of which he allotted to the complainants. The special master's report came on before me in the District Court and was approved with a few exceptions (26 F.Supp. 134). I expressed the opinion that there should be an apportionment of those profits in view of the other factors supplied by said respondents which principally contributed to the financial success of the motion picture. In my opinion I stated: "An allowance to the complainants of 25% of the net profits, as restated, or about $133,000.00, would be such a sum as could be justly fixed as a limit beyond which complainants would be receiving profits in no way attributable to the use of their play in the production of the picture."

But since the law of this Second Circuit, as set forth in Dam v. Kirk La Shelle Co., 2 Cir., 175 F. 902, 41 L.R.A.,N.S., 1002, 20 Ann.Cas. 1173, prohibited any apportionment of the profits of the picture, I expressed the hope that the "grotesque injustice" of the result in the principal case would lead to the adoption of some working rule by which the profits could be apportioned as they are in patent cases. On the appeal from the final decree thereafter entered in the principal case, the Circuit Court of Appeals of this Circuit discarded the rule laid down in Dam v. Kirk La Shelle Co., supra, and apportioned the net profits of the picture "Letty Lynton", allowing complainants one-fifth of the profits.

Complainants' objections to the report of the special master in the present case are (1) to the allowance of investment interest and depreciation as a deduction from gross receipts in arriving at the net profits of the theatre during the two weeks' period the picture was shown and (2) to the allowance of a deduction of respondent corporation's Federal income taxes paid on the net profits for said period, in determining the profits for which respondent should account. The opinion of the Circuit Court of Appeals in the principal case (Sheldon et al. v. Metro-Goldwyn Pictures Corporation et al., 2 Cir., 106 F.2d 45, filed July 28, 1939) holds that both interest on investment and also depreciation were properly allowed to respondents in that case as an expense in calculating the net profits for which they were accountable.

This respondent, an exhibitor, is unquestionably an innocent infringer. The special master so found and there seems to be no issue in that respect. Respondent is entitled to a deduction of what it paid in Federal income taxes on its profits from the exhibition of the picture for the two weeks' period, in arriving at the net profits for which respondent is accountable. See, Larson, Jr., Co. v. Wrigley, Jr., Co., 277 U.S. 97, 48 S.Ct. 449, 72 L.Ed. 800, and the

opinion of the Circuit Court of Appeals in the principal case, filed July 28, 1939. Both of complainants' objections are accordingly overruled.

■ Respondent filed eleven exceptions to the report of the special master herein. Exceptions 1, 2, 3, 4, 8, 9 and part of 11 are based on respondent's contention that complainants are not entitled to all the profits from the showing of the picture "Letty Lynton", but that there should be some apportionment of those profits. The special master overruled respondent's contention and followed the District Court's ruling in the principal case, which was then on appeal to the Circuit Court of Appeals. The recent decision of the Circuit Court of Appeals in the principal case held that on proper evidence there may be such apportionment, that the complainants are not entitled to the entire profits of the picture, which in the principal case amounted to almost $600,000, and stated: "* * * we can no longer accept the doctrine of Dam v. Kirk La Shelle Company [2 Cir., 175 F. 902, 41 L.R.A.,N.S., 1002, 20 Ann. Cas. 1173], that by no hook or crook can an infringer be relieved of so manifestly unjust a result." [106 F.2d 50.]

The appellate court's effort in the principal case to reach some standard or measure of apportionment and the reasons which urged it to do so are well expressed in the following paragraph of its opinion: "We are aware that out of all this no real standard emerges, and that it would be absurd to treat the estimates of the experts as being more than expressions of very decided opinions that the play should count for very little. But we are resolved to avoid the one certainly unjust course of giving the plaintiffs everything, because the defendants cannot with certainty compute their own share. In cases where plaintiffs fail to prove their damages exactly, we often make the best estimate we can, even though it is really no more than a guess (Pieczonka v. Pullman Co., 2 Cir., 102 F.2d 432, 434), and under the guise of resolving all doubts against the defendants we will not deny the one fact that stands undoubted. Procedural duties are devised in aid of truth; and their unsparing use may defeat their whole purpose, as here it would. However, though we do not press the burden of proof so far, the defendants must be content to accept much of the embarrassment resulting from mingling the plaintiffs' property with their own. We

will not accept the experts' testimony at its face value; we must make an award which by no possibility shall be too small. It is not our best guess that must prevail, but a figure which will favor the plaintiffs in every reasonable chance of error. With this in mind we fix their share of the net profits at one fifth."

The special master in the present case had before him by stipulation all of the testimony of the experts in the principal case in respect to the apportionment of the picture's profits. The Circuit Court of Appeals having fixed a standard of apportionment in the principal case, of one-fifth of the picture's profits to the complainants, that standard will be applied to the present case and complainants' share of the net profits derived by this respondent from the exhibition of the motion picture "Letty Lynton" is fixed at one-fifth. Respondent's exceptions numbered 1, 2, 4 and 9 are sustained. Respondent's exception numbered 3 need not be considered in view of the Circuit Court of Appeal's opinion in the principal case. Respondent's exception numbered 8 is overruled.

Respondent's exception numbered 10 and part of exception 11 relate to the method followed by the special master in determining the net profits of the picture "Letty Lynton" and the net profits of the other attractions on the Capitol Theatre program for the two weeks in question. The gross receipts from admission for the two weeks, April 29th to May 12th, 1932, were $116,889.10. The rental paid by respondent for the picture "Letty Lynton" to Metro-Goldwyn-Mayer Corporation was $16,144.95 for the first week and $8,436.94 for the second week, a total of $24,481.89. In addition the respondent paid for two short films $750, and for the stage show and orchestra (salaries, commissions and other expenses) $32,003.27. In addition payroll of the management and employees of the theatre amounted to $10,975.12 and trade bills totaled $14,216.70.

Total yearly fixed charges were $330,071.34 so that 2/52 thereof would be $12,695. In these yearly fixed charges were included investment interest $64,900.64, representing 6% on the money invested in the building, equipment, furnishings and leasehold, less depreciation charged off prior to the period involved in the accounting. There was also included in the yearly total fixed charges $114,636.52 representing depreciation at the rate of 4% on the cost of the

732

building, 10% on the equipment, 10% on the furnishings and about 2⅓% on the cost of the leasehold. The item of $12,695 was allowed by the special master as ²⁄₃₂ of fixed charges computed on a yearly basis. It is to this item that complainants' first exception relates. I overruled this exception for reasons stated above.

A full performance at the Capitol Theatre consumed 2 hours and 55 minutes; of which the picture "Letty Lynton" took 84 minutes, the overture by the orchestra 10 minutes, the stage show 44 minutes, the recessional by the orchestra 3 minutes, the two shorts 10 minutes each and the trailers 6 minutes. On a time basis, the performance of the picture took 48% of the entire entertainment time of the program. On a cost basis—the rental of the picture being $24,581.89 and the cost of the balance of the show $32,753.27—the picture was a little less than 43% of the cost of the whole performance.

■ Certain directors and managers of similar theatres in the neighborhood of the Capitol Theatre testified as experts for the respondent and all agreed that the parts of the entertainment program other than the main picture were considered necessary additional attractions at that time in order to draw patrons to the Capitol Theatre. Some of the experts testified to the percentage of patrons who attended the performance because of these additional attractions on the program. The special master received their testimony on the percentages subject to a motion to strike, which he subsequently granted. However, he considered the other testimony of the experts and the respondent's advertising, which featured the stage show and orchestra as well as "Letty Lynton", and the other evidence before him as furnishing a basis for a "reasonably exact apportionment". I think the testimony of the experts on percentages was admissible, and that the respondent's fifth exception should be sustained. But the weight to be given to that expert testimony is another question. In the principal case, the Circuit Court of Appeals considered the testimony of experts on the question of apportioning the profits of the picture itself. The Circuit Court of Appeals wrote: "While it remains true for the reasons we have already given, that, except in the most general way, the percentages of experts cannot be used to solve a problem in which there is no common measure; yet it would

be a mistake to deny all weight to them. Men often make quantitative judgments and act upon them in matters which logically admit of them as little as this."

■ The special master concluded that the picture "Letty Lynton" contributed 54% of the theatre's profits and that the other attractions contributed 46%. The complainants took no exception to this apportionment and apparently are satisfied with the percentages fixed by the special master. I am of the opinion that on all the evidence received at the hearings before the special master the apportionment was just. The respondent in its sixth exception contends that the apportionment should have been on the basis of the cost of the picture compared with the cost of the entire performance. The Circuit Court of Appeals in the principal case considered a similar contention that costs should be the determining factor in apportioning the profits of the picture itself, between the infringed play (Dishonored Lady) and the other elements that entered into the production of the picture. The Circuit Court of Appeals wrote: "The evidence offered in the case at bar was of two kinds: the price of the picture rights in the play, as both plaintiffs and defendants had agreed to it, and the opinions of experts. As to the first, if we knew that the price represented the utmost that the defendants would have given for the rights, and if at that time they also knew how much the picture as a whole would cost, the proportion between that cost and the price of the rights might vaguely indicate the defendants' judgment of the play's proportional drawing power. These conditions were not, however, shown to have been fulfilled. The price resulted from a bargain, determined as well by the plaintiffs' necessities, as by the defendants' estimate of the play's probable contribution. Again, while the defendants knew whom they would make the stars, it does not appear that they had forecast the whole cost of the picture. Finally, even were all this known, the cost of the other factors was by no means a measure of their relative drawing powers. For these reasons we discard the agreed price."

Respondent's sixth exception is accordingly overruled.

■ Respondent also argues that the special master should have taken the gross receipts ($116,889.10) and deducted from those receipts all the expenses of the

Capitol Theatre during the two weeks in question ($98,201.21), and should have divided the resultant net profits ($18,687.-89), 54% to the complainants ($10,091.46) and 46% to the respondent ($8,596.43). The effect of this would be to charge the profits earned by the picture, not only with its own cost but also with part of the cost of the "other attractions" of the program. I do not think that method would be reasonable.

The special master properly charged certain overhead expenses against gross receipts, such as payroll $10,975.12, trade bills $14,216.70, and fixed charges $12,695. The special master also charged an item of Federal income taxes, $2,979.23 against gross receipts. I think that was error and that the income taxes should have been apportioned after the net profits of the picture and the net profits of the other attractions had been determined. I think the special master was correct, however, in charging separately to the picture and to the balance of the show, their respective actual costs, after the general and fixed charges had been deducted from the gross receipts. Respondent's tenth exception is accordingly overruled.

The Federal corporate income tax was at a flat rate for the year 1932, and the total Federal income tax, $2,970.23, on the profits of the theatre for those two weeks, may readily be apportioned to the picture "Letty Lynton" and to the "other attractions", in the ratio that their respective profits bear to their combined profits. The profits of the picture would be chargeable with $2,483.62 and the other attractions with $495.61, of the total Federal income tax. Deducting its proportion of the Federal income tax, $2,483.62, from the net profits from the showing of the picture "Letty Lynton" exclusive of the tax, $17,-979.34, would leave $15,495.72. Of this sum, $15,495.72, the respondent should account to complainants for one-fifth, or $3,099.14, according to the standard of apportionment employed by the Circuit Court of Appeals in the principal case.

Respondent's exception numbered 7 is sustained and respondent's exception numbered 11 is in part sustained and in part overruled.

In my opinion the account as reported by the special master should be recast as follows:

| | | |
|---|---:|---:|
| Gross receipts of the Capitol Theatre from April 29th to May 12th, 1932.................. | | $116,889.10 |
| General and fixed charges for the same period | | |
| Payroll ....................... | $10,975.12 | |
| Trade Bills .................. | 14,216.70 | |
| Fixed Charges ............... | 12,695.00 | 37,886.82 |
| | | $ 79,002.28 |
| Picture's share (54% of $79,002.28)........ | | $ 42,661.23 |
| Less film rental of "Letty Lynton"....... | | 24,581.89 |
| Net profit from showing of picture "Letty Lynton" exclusive of any deduction for Federal income taxes.......... | | $ 18,079.34 |
| Federal income taxes chargeable to picture's profits ........................... | | 2,483.62 |
| Net profit from showing of the picture... | | $ 15,595.72 |
| Other attractions' share (46% of $79,002.28) | | $ 36,341.05 |
| Less cost of "other attractions".......... | | 32,753.27 |
| Net profit from "other attractions" exclusive of any deduction for Federal income taxes ........................... | | $ 3,587.78 |
| Federal income taxes chargeable to profits from "other attractions"....:...... | | 495.61 |
| Net profits from "other attractions"...... | | $ 3,092.17 |
| Complainants' share of net profits from exhibition of the picture "Letty Lynton" (1/5th of $15,595.72) for which respondent must account to complainants and for which complainants are entitled to judgment .............................. | | $ 3,099.14 |

The findings of fact and conclusions of law stated in the report of the special master, except as herein modified or rejected, are hereby adopted by this Court, and the special master's report is approved with the modifications herein indicated.

■ The special master applies for an allowance of $1,500. He has filed an affidavit showing that the hearings before him took 17 hours and that he spent 65 hours in studying briefs of counsel, in research work on the legal points involved and in preparing his report. I think that $350 for the 17 hours of hearings and $650 for the 65 hours of research work, or a total of $1,000 would be a fair allowance to the special master, which the respondent is directed to pay within thirty days of the entry of the final decree herein.

■ The attorneys for the successful complainants ask that complainants be allowed as a reasonable sum for attorneys' fees (17 U.S.C.A. § 40), the sum of $5,000. The services of complainants' attorneys included the preparation for trial, a short trial of a half day, opposing respondent's appeal from the interlocutory decree, pre-

734

paring for and attending the hearings before the special master, and the motion in respect to his report. Much of the legal work in this case followed the same lines as in the principal case, which involved very large sums and a great amount of work and in which the Circuit Court of Appeals has fixed $33,000 as a reasonable attorneys' fee for complainants' attorneys. Under the circumstances of the present case, and considering the amount of the judgment to which complainants will be entitled, I am of the opinion that $1,500 would be a reasonable attorneys' fee for the work of complainants' attorneys down to the entry of judgment on this decision. This allowance for attorneys' fees shall be included as part of complainants' costs in the final decree.