**In the matter of TELESPORT, INC., Debtor.**

**TELESPORT, INC., Plaintiff,**

**v.**

**Frank Randolph VESTAL, William G. Dance, Roland V.R. Martin, J.B. Edwards and F. Randolph Vestal Enterprises, Inc., Defendants.**

**Bankruptcy No. LR 81–887.**
**Adv. Nos. 81–669, 81–730, 81–728 and 81–731.**

United States Bankruptcy Court,
E.D. Arkansas, W.D.

Nov. 29, 1982.

See also, Bkrtcy., 22 B.R. 527.

Joe Polk, Little Rock, Ark., for plaintiff.

Joseph E. Kilpatrick, Jr., Little Rock, Ark., for defendants.

ORDER ADJUSTING ACCOUNTING FOR PROFITS SO AS TO REQUIRE TURNOVER OF $12,808.77 BY DEFENDANT F. RANDOLPH VESTAL ENTERPRISES, INC., TO PLAINTIFF AND DENYING MOTIONS OF DEFENDANTS VESTAL AND EDWARDS TO ALTER OR AMEND JUDGMENT OR FOR A NEW TRIAL

DENNIS J. STEWART, Bankruptcy Judge.

On the several claims made by the plaintiff debtor-in-possession, the court has previously rendered its judgments (1) denying all the plaintiff's claims for breach of contract, unjust enrichment, and violation of corporate fiduciary duties except to direct an accounting for all profits gained by F. Randolph Vestal Enterprises, Inc., through the use of a certain television film entitled "Me and Mr. McClanahan," see *In re Telesport, Inc.,* 22 B.R. 527 (Bkrtcy.E.D.Ark. 1982), and (2) on certain claims for turnover of property, directing the defendants Vestal and Edwards each to turn over sums of $11,630.44, respectively, to the debtor.

In compliance with the judgment denominated as (1), *supra,* the defendant F. Randolph Vestal Enterprises, Inc., has submitted a written accounting for the profits earned through use of the film "Me and Mr. McClanahan" as diminished by certain operating expenses. The plaintiff, in reply, has moved the court to adjust the accounting to disallow the expenses which the defendant corporation claims as warrantable credits against the total amount of the profits. And, in respect of the turnover judgment against the defendants Vestal and Edwards, the defendants have moved to alter or amend the judgment or for a new trial. The plaintiff, in a postjudgment motion in that matter, has requested that the turnover orders be rendered for additional sums. These three matters, which are now before the court for resolution, will be treated in the paragraphs which follow.

### The Accounting for Profits

On June 8, 1982, the defendant F. Randolph Vestal Enterprises, Inc., filed a written accounting for the profits earned through the showing of the television film, "Me and Mr. McClanahan." This document showed a total revenue gained from the showing of the film of $41,594.05. According to the accountant's written report accompanying the accounting, "Income for the film . . . was arrived at by dividing the total Bill Dance Sponsor contracts by the total Bill Dance films shown (20). This particular film . . . was distributed early in the season and made only forty-six (46) markets instead of the normal seventy (70); therefore, this pro-rata income calculation may be high."

The "net profit" from the showing of the film is reported in the documentary accounting as $4,777.62. To arrive at this figure, the following subtractions are made from the gross revenue figure of $41,594.05:

(1) $23,196.25 for "air time used," represented to be the "actual time charges";

(2) $3,096.15 for "syndication" costs, figured as a pro rata portion of the syndication costs for all the Dance productions for the period beginning July 10, 1981, and ending June 30, 1982;

(3) $1,301.70 as "distribution cost," again figured as a pro rata portion of the distribution costs of the Dance productions for the approximate year;

(4) $1,191.18 as "selling expenses," again figured as a pro rata portion of the selling expenses for all the Dance productions for the approximate year; and

(5) $8,031.15 as "general and administrative expenses," a pro rata portion of the overall general and administrative expenses for the approximate year.

Plaintiff challenges the appropriateness of the accounting, contending that, "(i)n order to be entitled to deduct any amounts of general and administrative expenses from the gross revenues it derived from Dance Film No. 005 ("Me and Mr. McClanahan"), Defendant must show that the production and marketing of Dance Film No. 005

caused a direct increase in general and administrative expenses in the amounts claimed as a deduction ... (citing authority) ... The burden is on the Defendant to establish that any amounts of general and administrative expense deducted from gross profits were incurred as the direct result of the production in marketing of Dance Film No. 005." The defendant F. Randolph Vestal Enterprises, Inc., on the other hand, argues that, if the pro rata overhead expenses were not subtracted from the gross revenues, "an unrealistically high, fictitious and unfair 'profit' figure would result"; that the "expenses include the salaries of employees, insurance, taxes and other items of general nature required to market an entire series of television shows, of which the show in question is a part." The defendant F. Randolph Vestal Enterprises, Inc., cites *Gordon Form Lathe Co. v. Ford Motor Co.*, 133 F.2d 487, 500 (6th Cir.1943), to the effect that:

"It is a matter of common knowledge that all well-managed manufacturing businesses recognize overhead costs as financial outlays expended in the production of an article or process ... There is probably no single phase of determining cost of manufacturing a device or machine which is more elusive or difficult than the allocation of overhead to a particular article. The impossibility of precise allocation is generally recognized and the law is not so exacting as to require a delicately balanced scientific method of determination which reaches a mathematical certainty."

The decision in that case goes on to hold, however, that there should be "sufficient correlation between direct labor costs, time and overhead expense to prove the allocation of manufacturing costs to a unit of production." *Id.* at 500. See also *Carter Products, Inc. v. Colgate-Palmolive Company*, 214 F.Supp. 383, 401 (D.Md.1963), cited and relied upon by the plaintiff, quoting from the Restatement of Torts, section 748, on the apportionment of costs, as follows:

"Some expenses involve no problem of apportionment because they are incurred only in connection with one kind of goods. Such are, for example, the wages paid to employees working only on that kind of goods. The problem of apportionment arises only with references to joint expenses, that is, expenses incurred in connection with several kinds of goods jointly. The typical example of such expense is the overhead or general expense, including rent, heat, power, office expense and the like. Accountants may use one of several methods in apportioning such expenses, the choice depending largely on the needs or convenience of the particular business. But the apportionment in an accounting for profits under the rule stated in this Section is made on a special basis determined by the theory of the liability for profits. The purpose of the apportionment is not business convenience or business policy but an accounting by the wrongdoer for the total gains from his wrongdoing. Consequently the accounting for profits seeks to determine as accurately as possible what part of the joint expenses was incurred in the manufacture or marketing of the infringing goods and what part would have been incurred if the infringing goods had not been manufactured or marketed. If the *manufacture or marketing of the infringing goods increases the joint expenses it is proper to allocate a part of them to these goods.* If the rule were otherwise, the defendant would be permitted to retain gains made by his own wrongdoing. The apportionment of joint expenses in the absence of such an increase would reduce the cost of the noninfringing goods and would thus permit gain for the defendant from his tortious conduct." (Emphasis added.)

See also *Dickinson v. O. & W. Thum Co.*, 8 F.2d 570, 574 (6th Cir.1925), to the effect that one owing a duty of accounting for profits "was entitled to no deductions from the sale price except such as were incident to the making of such sales and as pertained strictly to these goods. By failing (to separately keep an accounting therefor) but, on the contrary, commingling the same with his other product and operations with-

out keeping or attempting to keep any records or accounts whereby the selling cost and expense attributable to these goods could be separated from his other operations, he brought himself within the principle (that) . . . (a)ll the inconvenience and loss from the confusion is thrown upon the party who produces it." And see *Sammons v. Colonial Press,* 126 F.2d 341, 350, 351 (1st Cir.1942), holding that general "overhead," i.e., "general charges or expenses, collectively, in any business which cannot be charged up as belonging exclusively to any particular part of the work or product, as rent, taxes, insurance, lighting, heating, accounting, and other office expenses, and depreciation," may be deducted insofar as they "assisted in the production of the infringement."

Under these principles, the showing made by the defendant F. Randolph Vestal Enterprises, Inc., as to the actual time charges of airing costs—that of $23,196.25—must be regarded as deductible from the gross revenue. This sum is represented without contradiction to be the cost of airing the particular film for which the accounting was to be made. Therefore, there can be little or no question that this sum is a proper deduction from the profits to be paid over to the defendant.

The same conclusion applies to the apportioned costs for distribution and selling. In this regard, the court must be guided in drawing inferences from the evidence according to commonsense principles. There can be no question that the profits which were realized from the showings of the particular film in question were realized as the result of some selling and distribution expense; selling and distribution were a necessary prerequisite to the earning of the profits. This court therefore concludes that these expenses are satisfactorily linked to the production of the profit from the showing of the particular film. Under the rule of the case of *Sammons v. Colonial Press, supra,* the evidence which has been adduced is sufficient to show that expenses for selling and distribution "assisted in the production" of the profit to be accounted for.

With respect to the deduction of $8,031.15 for "general and administrative expenses," the evidence before the court does not satisfactorily show this linkage. From the evidence which has been adduced, it would appear that there were no production costs (as the defendant admits explicitly) and that all that was necessary to gain the profit was to market and sell the film. It perhaps stretches the principles in the above cases to allow any appreciable sum for distribution as to a single film. But, as to these general costs, it is not shown that any of them could be regarded as attributable to the production of the profit in this case. Insofar as it is shown in this case, the general and administrative expenses may have been the same even without the distribution and selling of the particular film. This court therefore concludes that a sufficient showing for the deduction of this $8,031.15 has not been made.

Accordingly, the sum to be turned over to the plaintiff by the defendant F. Randolph Vestal Enterprises, Inc., is that of $12,808.77.

*The motions of defendants Frank Randolph Vestal and J.B. Edwards for a new trial or to alter or amend the judgment directing them each to turn over sums of $11,630.44 to the plaintiff.*

The substance of these motions has been previously addressed by this court in its order entered on July 12, 1982. The reasons for denying the motion to alter or amend judgment or for new trial which are therein stated are incorporated herein by reference. For those reasons, the motions will be denied.

*The request of the plaintiff for the turnover of additional sums*

As part of its judgment of June 17, 1982, directing the defendants Frank Randolph Vestal and J.B. Edwards each to turn over to Telesport the sum of $11,630.44, the court additionally directed that

"the defendant Vestal, within 45 days of the date of this order, exhibit to counsel for plaintiff documents, or copies thereof,

which support the claim that other property which was formerly listed as property of Telesport was really property on consignment."

The plaintiff now asserts that more than 45 days have passed since the rendition of this order and judgment on June 17, 1982, and a satisfactory exhibition of documents or other satisfactory proof of consignment has not been made by the defendant Vestal.

It must be noted that, in moving to alter or amend the judgment of June 17, 1982, the defendant Vestal also moved to delete this duty of exhibiting documents, contending that "(t)hese invoices and contracts are in the possession of plaintiff" and that, therefore, requiring him to produce copies of them would be unfair. If this is so, of course, as has been previously pointed out, Mr. Vestal can designate the documents and describe their location to the plaintiff.

At the present time, however, the question of the sufficiency of this accounting is not ripe for ruling. The filing of the motion to alter or amend judgment tolled the running of the 45-day period for compliance. When that period of time has run anew, the plaintiff may enforce the court's order by any means provided by Rules 770 or 920 of the Rules of Bankruptcy Procedure or any other lawful method.

It is therefore, for the foregoing reasons,

ORDERED AND ADJUDGED that the accounting of the defendant F. Randolph Vestal Enterprises, Inc., be, and it is hereby, adjusted in part and that the defendant F. Randolph Vestal Enterprises, Inc., accordingly turn over to the plaintiff, within 45 days or such additional time as the court may for good cause shown grant, the sum of $12,808.77. It is further

ORDERED AND ADJUDGED that the defendants Frank Randolph Vestal's and J.B. Edwards' motion to alter or amend the judgment of June 17, 1982, or for a new trial, be, and it is hereby, denied and that, accordingly, they each turn over the sum of $11,630.44 within 45 days to the plaintiff, and sufficiently account for the property alleged to be property on consignment.